10-28-03
NYLJ

## ey Fee Regulation

f the New York State Bar Association is court cases. The Special Committee to on will review statutes, court rules, and establish and review lawyer compensa- consider the issue of attorney contin- of Harris Beach in Rochester and Steven Manhattan are the committee co-chairs.
— John Caher

## g Offenders Gets Boost

d Senate Majority Leader Joseph L. Bruno n to provide drug treatment to non-vio- ernative to prison. The $2.8 million ini- covery, is aimed at reducing recidivism g them in a mandatory one-year rehabili- articipants will be rewarded with no felony e. Road to Recovery builds on New York ative to Prison program, participants of t less likely to return to prison than com- rve time. The city program was launched District Attorney Charles J. Hynes, and r four boroughs. — Tamara Loomis

## ers to EPA Air Pollution Rules

w York, and several Northeast cities, d the Environmental Protection Agency Bush administration's changes to the rule makes it easier to upgrade utilities, ial facilities without installing addition- le, which was proposed last December ke effect in two months, and states have The EPA said in a statement it does not

Continued on page 4

# New Guidelines Narrow Causes For Granting Lesser Sentences

**BY TOM PERROTTA**

GARY FAZIO will not be the last person with a gambling problem convicted of a federal crime, but chances are his sentence will be more lenient than most of those who follow him.

Mr. Fazio, who was convicted of laundering $2.5 million he made off his bookmaking operation, was sentenced Friday to five years probation by Southern District Judge Kimba M. Wood. He received a reduced sentence for what his attorney argued is a "pathological" gambling habit that began at the racetrack during his childhood.

As it turns out, Mr. Fazio missed a mandatory 1 year to 1-1/2 year jail sentence by a day. Yesterday, new guidelines from the U.S. Sentencing Commission went into effect that prohibit and limit numerous circumstances for which federal judges can grant downward departures for criminals. A gambling addiction is among those that was eliminated.

Mr. Fazio's attorney, Jeffrey Lichtman, knew what a difference a day could make last week when he pushed to complete his client's sentencing, which had been originally scheduled for April but had been pushed back by adjournments.

"The judge said, 'Do you want to work through lunch,' and I said, 'Absolutely,'" Mr. Lichtman said in an interview after the sentence was passed.

In opposition, Assistant U.S. Attorney Robin W. Morey argued in a letter to Judge Wood that the court should not grant a downward departure even before the guidelines went into effect, and should take into account the public policy implications of the Sentencing Commission's changes. After a hearing Friday, Judge Wood granted the departure and spared Mr. Fazio from prison.

A spokesman for Southern District U.S. Attorney James B. Comey declined to comment on whether the office would appeal the sentence.

Gambling is not the only cause for a downward departure eliminated under the new guidelines, which were requested by Congress in an amendment to the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today [PROTECT] Act of 2003.

No more downward departures

*Under the new guidelines, a judge can no longer grant a downward departure if he or she finds that a criminal had a very small role in a crime.*

Continued on page 4

## ■ BEHIND THE NEWS ■
### Panel Laments Lack Of Judicial Discretion

**BY TOM PERROTTA**

ON PAPER, Jorge Santiago's criminal case is a routine one: an alleged gang leader waives a gun at a former informant, pleads guilty to gun possession with an attorney at his side and is sentenced to 15 years in prison based on three prior convictions as a teenager. Less than two weeks after hearing Mr. Santiago's appeal, the U.S. Court of Appeals for the Second Circuit affirmed his conviction and sentence in a brief ruling that spoke not a word in his favor.

Oral arguments for the appeal, though, were not so mundane. The three-judge panel of Guido Calabresi, Roger J. Miner and Chester J. Straub offered little hope that Mr. Santiago might win a lesser sentence, but they minced few words on the subject of strict sentencing guidelines that have left federal judges with little to no discretion in determining criminal sentences.

"You're telling me ... that the system we have set up, that has been set up by Congress, which has removed discretion from the judges, has given discretion to the office, as a practical matter?" Judge Calabresi told Robert M. Appleton, an assistant U.S. attorney for the District of Connecticut. "And that is a fundamental objection to the system, that it takes discretion from independent courts and gives it to dependent prosecutors, who then have to answer to the attorney general and other political figures. But that's the system and it's

been held constitutional, and here we are."

The judge continued, "This case is a perfect example of you telling us that your office made some decisions with respect to what is right and just and true, and the district court is thereby prohibited from having any say in the matter, and that's a pretty serious matter."

Mr. Appleton began to point out that Mr. Santiago had accepted a plea bargain with the consent of his attorney, but Judge Miner interrupted him, saying, "If we go along with your adversary, you'll probably take our names and report them to the attorney general."

"Be sure you spell them correctly," Justice Straub said immediately.

"Especially Straub," Justice Calabresi said. "S-T-R-A-U-B." As the laughter in the courtroom subsided, Mr. Appleton continued on and faced no other verbal barrages.

In an interview after Mr. Santiago's sentence was affirmed, Mr. Appleton suggested he fell victim to happenstance that day, considering that a week earlier the Judicial Conference of the United States, led by Chief Justice William H. Rehnquist, had called for the repeal of an amendment to the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today [PROTECT] Act of 2003, a recently enacted law that directed the U.S. Sentencing Commission to tighten sentencing guide-

Continued on page 4

---

# Lawye In Cap

## Eastern Di Conflict i

**BY ANTHONY LIN**

A FEDERAL judge has disqualified noted ty defense lawyer Eph from representing rep ized crime boss Joseph the grounds that Mr. ously represented a witness who may testif Massino.

Mr. Massino, the all New York's Bonanno c was indicted in January including racketeering, l gambling and murde charged additionally in the 1999 murder of Bo captain Gerlando Scias

It is for his alleged r ascia's murder that Mr. face the death penalty to trial on all charges in request of Mr. Massi lawyers, Mr. Savitt wa death counsel earlier th

Though Mr. Massin had sought to waive the conflict, Eastern Distric Judge Nicholas G. Garau fis yesterday granted a m Eastern District U.S. Atto to disqualify Mr. Savitt er representation of a p ness against Mr Massin

"During the course sentation of [the coop ness], Savitt learned con are protected by attorne ilege," the judge wrote would arise during trial currently were repres [the witness] and Mass

The judge further n Savitt represented the witness from 1998 un

---

## Parts of I Made Pub

**BY JOHN CAHER**

ALBANY — Large p tions of an internal inv tigatory report prepar by a criminal defense l firm are not shielded either the attorney-cli privilege or the work-pr uct doctrine because t founder of a mall dev opment at the center c RICO action granted a l paper interview genera issues contained in the eral jurist has found.

But Northern Distri trate Judge Randolph the plaintiffs are entit redacted version and m key information — the alleged perpetrator — already disclosed to th

Magistrate Judge Tre *Lugosch v. Congel*, 00-C in the context of a prot where minority partne Cos. allege that they we by insiders. The case been ongoing for a nu and proceeded throug trate Judge Treece ter

---

*erest*

Supreme Court, Suffolk, (p. 19, col. 1).

### UNITED STATES COURTS

■ **CRIMINAL PRACTICE:** Gang constitutes entity engaged in attempted murder to serve as requisite act of racketeering. *United States v. Joanna Pimentel*, 2d Cir., (p. 18, col. 1).

■ **CRIMINAL PRACTICE:** Upward enhancement for 'sophisticated means' is properly imposed on sophisticated scheme. *United States v. James Rinaldo Jackson*, 2d Cir., (p. 19, col. 3).

■ **EMPLOYMENT:** Plaintiff who was offered a different job after her return to work fails to allege discrimination. *Sabatino v. Flik International Corp.*, SDNY, (p. 20, col. 1).

■ **EMPLOYMENT:** Court affirms decision that plaintiff's sex was a motivating factor for failure to give promotion. *Petrovits v. New York City Transit Authority*, SDNY, (p. 21, col. 1).

■ **CRIMINAL PRACTICE:** Plaintiffs fail to show that officers' alleged misconduct was attributable to the city. *Griffin v. The City of New York*, SDNY, (p. 21, col. 3).

■ **CIVIL PRACTICE:** Bank is grossly negligent for allowing destruction of e-mail evidence in trader's discrimination suit. *Zubulake v. UBS Warburg LLC*, SDNY, (p. 22, col. 1).


PAGE 5

# Judges Lament the Lack of Discretion

Continued from page 1

lines. The amendment to PROTECT also authorized the collection of information on the sentencing habits of federal judges. The commission's amended guidelines, which were released earlier this month, went into effect yesterday.

"I guess I wasn't expecting some of the discussion," Mr. Appleton said. "I don't know if my timing was that great."

Jonathan Svetkey of Watters & Svetkey in Manhattan, who represented Mr. Santiago on appeal, agreed that Mr. Appleton was just standing in the wrong shoes that day.

"The prosecutor is certainly serving as a proxy for [Attorney General John] Ashcroft in this case," Mr. Svetkey said. "Clearly, [Mr. Appleton] was not where the comments were directed."

## Looking for Latitude

Though he was pleased with the judges' remarks, Mr. Svetkey said he would have been happier if the court had sided with him, even though he knows full well that "the law provides them with very little latitude."

Mr. Santiago's circumstances are not as simple as they might seem on an indictment. Judge Peter C. Dorsey, a federal judge in the District of Connecticut, found in 2002 that a long prison term could hurt the young son of Mr. Santiago and his fiancee. The child has a chronic genetic condition that causes muscle weakness and respiratory failure and he was hospitalized for the first 18 months of his life.

Mr. Santiago also cares for two other children from his fiancee's previous marriage and has worked consistently since 1998, Mr. Svetkey said, showing few signs of the conduct that earned him three criminal convictions by the age of 17, 10 years before his most recent conviction.

Judge Dorsey felt a lesser sentence was warranted, but saw no room for it under the sentencing guidelines — the ones that were in place before the Sentencing Commission was directed this year to make them more strict. From the bench he said, "I have the sense that maybe the thing to do is take Mr. Santiago, send him down to Washington, let Congress sentence him. That's what they seem bound and determined to do, but they don't give any flexibility."

Mr. Appleton said there was no arguing with the fact that the sentencing guidelines take discretion away from federal judges, but he disagreed that they always give prosecutors the last word.

"I don't know that I agree with that, that the prosecutor has all the authority," he said.

## Latin Kings

As far as Mr. Santiago, Mr. Appleton said his office had prosecuted him as part of a long-term investigation into the Latin Kings, a gang that has been prominent in Bridgeport, Conn., since the 1980s. Mr. Santiago had reached leadership status in the gang, Mr. Appleton said, and was believed to be ready to murder a former federal witness.

---

*Judge Roger J. Miner interrupted the prosecutor, saying, "If we go along with your adversary, you'll probably take our names and report them to the attorney general."*

---

Harry First, a professor of antitrust and business crime at New York University School of Law, said that federal prosecutors are not necessarily pleased, either, with the recent changes in Congress and the U.S. Department of Justice. Plea bargains are becoming more difficult to make, as prosecutors have been told to seek the stiffest penalties possible. If prosecutors feel micromanaged and judges feel powerless, it does not benefit the practical, everyday working relationship between attorneys and judges, he said.

"When you have a guy like [U.S. District Judge] John Martin resigning over this — he is a former prosecutor," Mr. First said. "This is someone who has a good feel for the criminal justice system."

Alan Vinegrad, a partner at Covington & Burling and the former U.S. attorney for the Eastern District of New York, said the Sentencing Commission's new guidelines eliminate some reasons for downward departures and make others more difficult to win.

"But I think they could have been far more extreme," he said.

As far as the vocal reactions of federal judges, Mr. Vinegrad said, "It's pretty unusual for judges to be speaking out as bluntly as they are against legislation that curtails their authority." Down the road, he said, his hope is that Congress will take a longer look at sentencing and say, "maybe we've gone too far."

Mr. First said he viewed the tug-of-war between judges and Congress as a return to the days after the Sentencing Reform Act of 1984 was passed.

"As we got more experiences with it, the courts figured out ways to put in a little more discretion," he said. "It seems to me that we are now back in the 1984 trenches where the judges are digging in again."

## New Guidelines

Continued from page 1

will be allowed for accepting responsibility for a crime. Though criminals can receive a downward adjustment in a sentence if they accept responsibility for their actions, no additional departures can be awarded by judges for extraordinary examples of this conduct, such as, say, providing restitution to victims before being charged.

Under the new guidelines, a judge can no longer grant a downward departure if he or she finds that a criminal had a very small role in a crime, unlike in the past. Nor can a departure be granted simply because a defendant agreed to plead guilty. Also, a defendant's ties to a community — such as work for a charity or a civic group — can no longer form the basis for a downward departure.

Other causes for departure that have not been eliminated were made more difficult to justify. Under §5K2.0, judges are allowed to grant downward departures for circumstances not specifically identified in the guidelines. Under the new rules, though, such departures are only warranted in "the exceptional case."

Departures for family ties will be more difficult to win, as defendants must show that incarceration would result in a financial loss to the family that is beyond that normally associated with going to jail and also irreplaceable. Defendants must also show how a reduced sentence would alleviate this problem.

Aberrant behavior has been restricted as a cause for a reduced sentence under the guidelines as well. Also, judges can no longer grant a departure based on a combination of mitigating factors unless each factor is a specific grounds for departure under the guidelines.

The amendments to the guidelines can be found on the U.S. Sentencing Commission's Web site, at http://www.ussc.gov/2002suppc/OCT03CON.pdf.